IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LINDSEY McWHORTER,

    Plaintiff,

v.

KINDERCARE LEARNING
CENTERS, LLC,

    Defendant.

CIVIL ACTION FILE NO.
1:11-CV-04447-TWT-GGB

## **NON-FINAL REPORT AND RECOMMENDATION**

This Title VII and Pregnancy Discrimination Act case comes before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. [Doc. 7].

### **I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that she interviewed for a position with Defendant on January 24, 2011, and that Kindercare's director, Carla Bentley ("Bentley"), conducted the interview. During the interview, Bentley asked Plaintiff if she was pregnant, and Plaintiff confirmed that she was. Bentley asked her to provide a clean bill of health. Plaintiff provided a doctor's statement saying that she had no disabilities regarding her

pregnancy. On February 2, 2011, Defendant hired Plaintiff as a manager. [Doc. 6, Am. Compl., ¶¶ 12-17].

Plaintiff contends that during the eight days she was employed, that she was harassed on a daily basis due to her pregnancy by:

    (1)    Defendant refusing to train her during her brief period of employment;

    (2)    Defendant refusing to allow requested breaks;

    (3)    Bentley repeatedly telling her not to tell anyone that she was pregnant;

    (4)    Bentley telling her that if she told anyone that she was pregnant, that she would be harassed;

    (5)    Being told by fellow manager Amanda LNU (last name unknown) that Bentley was going to fire her due to her pregnancy;

    (6)    Amanda LNU and Bentley asking Plaintiff about her pregnancy;

    (7)    Kristy LNU saying Bentley was trying to "punish" Plaintiff for being pregnant;

    (8)    Bentley stating that Plaintiff would be an "unreliable" and "unvalued" employee due to her pregnancy.

[Am. Compl. ¶ 18].

Plaintiff asserts that despite her title of "manager," she did not manage anyone and was not allowed to contribute anything to the work environment. [Id. ¶ 19]. Plaintiff alleges that on February 10, 2011, Plaintiff ("humiliated, embarrassed, and outraged at her treatment due to her pregnancy") found the working conditions intolerable and resigned. [Id. ¶ 20].

On March 11, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2011-02437, alleging discrimination due to Plaintiff's sex and disability (pregnancy). The EEOC issued a right to sue notice on October 31, 2011. [Am. Compl. ¶¶ 5-6].

Plaintiff filed this action on December 21, 2011. [Doc. 1, Compl.]. On January 24, 2012, she filed an amended complaint. [Doc. 6, Am. Compl.]. Plaintiff's Amended Complaint alleges that Defendant's hostile treatment and constructive discharge of Plaintiff constitutes unlawful sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII")(Count I), and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e-(k) ("PDA") (Count II). Plaintiff alleges that, as a result, she suffered "egregious emotional harm manifesting itself in the form of severe distress, anxiety, nervousness, humiliation, pain, and suffering." [Am. Compl. ¶ 27].

AO 72A
(Rev.8/82)

On February 3, 2012, Defendant filed the instant motion to dismiss, arguing that Plaintiff's Amended Complaint should be dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to assert sufficient facts to support any of Plaintiff's claims or legal theories, namely, Plaintiff's claims for "hostile treatment and constructive discharge" based on Plaintiff's sex and disability. Plaintiff has filed a response brief in opposition to Defendant's motion to dismiss.

## II. LEGAL STANDARD

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint need not contain "detailed factual allegations," but must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)(citation omitted); Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950-51 (2009).

In Iqbal, the Supreme Court clarified the pleading standard for civil actions, stating:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

4

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. at 1949 (internal quotes and citations omitted).

The Iqbal Court went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss," the Supreme Court then advised that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2))(other citations omitted). All reasonable inferences are to be made in favor of the plaintiff. Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).

5

## III. DISCUSSION

The PDA brought discrimination on the basis of pregnancy within the existing Title VII statutory framework prohibiting sex-based discrimination. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-13 (11th Cir. 1994) (citing 42 U.S.C. § 2000e(k)(1981)). Thus, the analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. Id. (citation omitted). Accordingly, the court will analyze Plaintiff's Title VII and PDA claims together.

### A.     Plaintiff's Hostile Work Environment Claim

Title VII, as amended by the PDA, prohibits employers from discriminating in the workplace because of the employee's sex and/or pregnancy. See Newport News Shipbuilding and Dry Dock Co. v. EEOC, 462 U.S. 669, 670-71, 103 S. Ct. 2622, 2624 (1983). A complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss. Henderson v. JP Morgan Chase Bank, N.A., 436 F. App'x 935, 937 (11th Cir. 2011)(citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 997-98 (2002)). But complaints alleging discrimination still must meet the "plausibility standard" of Twombly and Iqbal. Id. (citing Edwards v. Prime, Inc., 602

F.3d 1276, 1300 (11th Cir. 2010) (noting that to state a hostile work environment claim post-Iqbal, employee "was required to allege" five *prima facie* elements)).

Plaintiff's Amended Complaint alleges that she was subjected to harassment due to her pregnancy. To plead a hostile work environment claim under Title VII and the PDA, Plaintiff must allege sufficient facts showing that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her pregnancy; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability. See Edwards, 602 F.3d at 1300; Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010)(stating that disparate treatment "can take the form either of a 'tangible employment action,' such as a firing or demotion, or of a 'hostile work environment' that changes 'the terms and conditions of employment, even though the employee is not discharged, demoted or reassigned.'"); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Mendoza v. Borden, Inc., 195 F.3d 1238, 1258 (11th Cir. 1999).

Plaintiff must show that she was subjected to a workplace that was "permeated with 'discriminatory intimidation, ridicule, and insult.'" Harris v. Forklift Sys., 510 U.S.

7

17, 21 (1993)(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). Plaintiff must also establish that the environment was both subjectively and objectively hostile. To be actionable, the challenged conduct must create an environment that is both objectively hostile or abusive (the reasonable person standard) and an environment that the plaintiff herself perceives to be abusive (the subjective standard). Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002). The court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. Harris, 510 U.S. at 21-22; Miller, 277 F.3d at 1276. The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. See, e.g., Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); Harris, 510 U.S. at 21-22. Title VII is not a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Here, assuming the purported instances of harassment set out in Plaintiff's Amended Complaint are true, Plaintiff's allegations fail to meet the pleading standards for a hostile work environment claim based on gender or pregnancy. First, Plaintiff does

not allege or show that the referenced conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment. Even if she had so alleged, Plaintiff does not provide sufficient factual context (or any allegations) from which the court could infer that her perception was objectively reasonable. While Plaintiff may have felt that her employer's conduct was unwarranted, embarrassing, and inappropriate, the requirement is that the workplace be so permeated with "*discriminatory* intimidation, ridicule, and insult" that it altered the conditions of Plaintiff's employment. See Meritor, 477 U.S. at 65 (italics added).

From the facts alleged in Plaintiff's Amended Complaint, Plaintiff worked for Defendant for approximately eight days. The conduct complained of consists of failure to train, limiting break periods, asking Plaintiff not to reveal her pregnancy, inquiring about her pregnancy, and speculating on possible future actions by management. The incidents Plaintiff alleges lack the frequency, severity and pervasiveness that have been found to constitute an objectively hostile or abusive work environment.

Moreover, alleging harassment that might take place at some unknown point in the future does not provide sufficient grounds to plausibly state a claim. Plaintiff's assertions that Bentley warned her that she "*would be* harassed," that she "*was going to*" be terminated, and that Plaintiff "*would be*" an unreliable and unvalued employee all

9

aver discrimination that did not actually happen *during the week that she was employed*. [Am. Compl. ¶ 18, italics added]. Allegations of conduct that has not yet occurred are insufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Furthermore, Plaintiff's claim is contradicted by her own allegations that Defendant hired her, despite learning that she was pregnant, which conduct does not plausibly suggest a discriminatory state of mind.

For the reasons stated, Plaintiff's factual allegations of harassment and hostile work environment fail to state a claim for relief that is plausible on its face, and are therefore properly dismissed pursuant to Rule 12(b)(6). Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009)(citing Iqbal, 129 S. Ct. at 1950; Twombly, 550 U.S. at 561-62, 570, 127 S. Ct. at 1968-69, 1974).

**B.     Plaintiff's Constructive Discharge Claim**

Plaintiff next alleges that she was constructively discharged when she elected to submit her resignation after eight days of employment.

The threshold for a constructive discharge claim is higher than that for a hostile work environment claim. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001), *modified on other grounds*, Anderson v. Cagle's, Inc., 488 F.3d 945 (11th Cir. 2007). A plaintiff claiming constructive discharge must show "a greater severity or

10

pervasiveness of harassment" such that resignation is the only reasonable response. See Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009).

Unlike a hostile work environment claim, which considers a plaintiff's subjective feelings and objective factors, see Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1247 (11th Cir. 2004), a constructive discharge claim involves only an objective standard. See Hipp, 252 F.3d at 1231. To sustain a constructive discharge claim, Plaintiff must sufficiently allege and show that Defendant imposed working conditions so onerous that a reasonable person in her position would have been compelled to resign. See Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003)(being reprimanded and hearing from coworkers of management's intent to fire him at some point in the future were insufficient to show constructive discharge); Thomas v. Dillard Dep't Stores, Inc., 116 F.3d 1432, 1433-34 (11th Cir. 1997).

Finally, a plaintiff must allow the defendant adequate time to correct the alleged hostile working conditions in order to establish constructive discharge. See Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996)("A constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation."). "Part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." Garner v.

11

Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987)(emphasis in original). Constructive discharge is difficult to show if the supposedly "intolerable" conditions lasted only for a short time. Hill v. Winn-Dixie, 934 F.2d 1518, 1527 (11th Cir. 1991).

Here, Plaintiff's Amended Complaint fails to state a plausible claim for constructive discharge. The comments that Plaintiff alleges her coworkers and supervisor made to her in the week or week and a half that she worked for the Defendant do not suggest or indicate such objectively intolerable working conditions that would compel a reasonable person to resign, especially in light of the short duration of time within which these events allegedly occurred. Courts in this circuit have failed to find that an employer constructively discharged plaintiffs in situations more egregious than those alleged in this case. See Wingfield v. South Univ. of Fla., Inc., No. 8:09-cv-01090-T-24-TBM, 2010 WL 2465189, at *9 (M.D. Fla. June 15, 2010)(listing cases); see also Dale v. Wynne, 497 F. Supp. 2d 1337, 1344 (M.D. Ala. 2007)(concluding that no constructive discharge occurred where supervisor only communicated with employee by email, told employee's peers that he needed to approve anything she did, and would not allow her to manage her subordinates).

In addition, Plaintiff's complaint does not allege or indicate that Plaintiff ever complained to her employer or gave her employer a reasonable chance (or any chance

12

at all) to address or remedy the situation.  See Kilgore, 93 F.2d at 754 (holding that summary judgment was appropriate on plaintiffs' constructive discharge claim where plaintiffs did not allow sufficient time for employer to correct the situation); Garner, 807 F.2d at 1539 (denying constructive discharge claim where employee, who quit just one day after complaining of an adverse reassignment which she felt was in retaliation for an EEOC claim, failed to give the employer sufficient time to address the matter).

For the reasons stated, Plaintiff's constructive discharge allegations are due to be dismissed, pursuant to Rule 12(b)(6).  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965; cf. Hipp, 252 F.3d at 1231 (listing examples of pervasive conduct).

### IV.  CONCLUSION

For the reasons stated above, I **RECOMMEND** that Defendant's motion to dismiss Plaintiff's Amended Complaint, pursuant to Rule 12(b)(6), be **GRANTED without prejudice, with leave to amend** within fourteen (14) days of the entry of this Report and Recommendation.  Failure to file an amended complaint as permitted herein may result in a recommendation that this action be terminated against Plaintiff, and in favor of Defendant, with prejudice.  Briehler v. City of Miami, 926 F.2d 1001, 1002-03 (11th Cir. 1991)(dismissal with leave to amend becomes final when the period expires).

13

**IT IS SO RECOMMENDED**, this 31st day of May, 2012.

                                                                                  /s/ Gerrilyn G. Brill
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)